UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **PAUL D. LOWE**, | ) | Case No. 5:08 CV 0686 |
| | ) | |
| Petitioner, | ) | Judge Donald C. Nugent |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **STARK COUNTY SHERIFF** | ) | (Regarding ECF #1,15) |
| **TIMOTHY A. SWANSON**, | ) | |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Paul D. Lowe  was convicted of "sexual battery" under Ohio Rev. Code §2907.03(A)(5) due

to his admitted illicit, but consensual relationship, with his 22-year old adult step-daughter, who was

neither  related by blood nor adoption: The crime, a third degree felony, is set out as:

> A) No person shall engage in sexual conduct with another, not the spouse of the
> offender, when any of the following apply:  . . .
>
> (5) The offender is the other person's natural or adoptive parent, or a stepparent, or
> guardian, custodian, or person in loco parentis of the other person.

See Ohio Rev. Code §2907.03(A).

Its purpose is "quite obviously designed to be Ohio's criminal incest statute." *State v. Noggle*, 67

Ohio St.3d 31, 33, 615 N.E.2d 1040, 1993-Ohio-189 (1993). Lowe exhausted his state court appeals,

and was unable to convince the Ohio Supreme Court that he has a federally-protected constitutional

right to a sexual relationship with his step-daughter. See *State v. Lowe,* 112 Ohio St.3d 507, 861

N.E.2d 512, 2007-Ohio-606 (2007).  His state sentence of 120 days incarceration to be followed by

3 years of community control has been stayed by the state trial court and this suspension remains

5:08  CV 0686                                      2

in effect pending the outcome of federal habeas review. (See Petitioner's Memorandum in Support

p. 1, ECF # 1-3). [1]


Lowe now petitions for federal habeas corpus under 28 U.S.C. §2254 to overturn his sexual

battery conviction challenging the constitutionality of the application of Ohio's incest statute to his

circumstances as infringing on his fundamental right to consensual sexual relationships within the

privacy of the home.  Lowe contends that  his incestuous relationship is protected by the Due

Process Clause of the Fourteenth Amendment based upon *Lawrence v. Texas*, 539 U.S. 558, 123

S.Ct. 2472, 156 L.Ed.2d 508 (2003), and subject to review under the doctrine of strict scrutiny to

be overcome by only a compelling state interest.[2]  His case is before the district court on his petition

for federal habeas corpus pursuant to 28 U.S.C. §2254 and his unopposed motion for summary

judgment. (See ECF # 1, 15)

---

[1] Conviction followed by release on bail while under a stay of sentence satisfies the "in custody" requirement of 28 U.S.C. §2254. See *Hensley v. Municipal Court*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973); *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 300-02, 104 S.Ct. 1805, 80 L.Ed.2d 311(1984); *Lawrence v. 48th Dist. Court*, 560 F.3d 475, 480-81 (6th Cir. 2009). On August 19, 2004 the state trial court ordered a stay of execution of Lowe's sentence with continuation of bond. The stay was continued on September 9, 2005 and again on March 22, 2007. Finally the stay of execution was continued on November 29, 2007 by the state trial court pending the outcome of Lowe's federal habeas corpus proceedings. See Docket in Case No. 2004 CR 0547 at http://www.starkcourt.org/docket/index.html. Judicial notice may be taken of public records. See FRE 201; *Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999), abrogated on other grounds *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

[2]  The pertinent portion of the Fourteenth Amendment in issue reads,"[N]or shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const., Amdt. 14, § 1.

5:08  CV 0686                                          3

*Summary Judgment:*

      Summary judgment is appropriate in this matter. "The Federal Rules of Civil Procedure apply in the habeas context to the extent that they are not inconsistent with Habeas Corpus Rules." *Woodford v. Garceau*, 538 U.S. 202, 208, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003); and see Rule 11 of the Rules Governing Section 2254 Cases; Fed. R. Civ. P. 81(a)(4)(A) & (B).  Summary judgment has been recognized as a measure to avoid the need for an evidentiary hearing. See *Blackledge v. Allison*, 431 U.S. 63, 81-82, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).  Consistent with this, the federal courts have recognized that summary judgment procedures may be appropriate in federal habeas corpus cases.  See  *Clark v. Johnson*, 202 F.3d 760, 764-65 (5th Cir. 2000), *cert. denied*, 531 U.S. 831 (2000)("As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases."); *Whitaker v. Meachum*, 127 F.3d 714, 715-16 (2nd Cir. 1997)(cross-motions for summary judgement); *Gentry v. Sinclair,* 576 F. Supp.2d 1130, 1138 (W.D. Wash. 2008). There are no disputes concerning the facts leading to conviction in this matter.  "Summary judgment is appropriate when the pleadings, the discovery and disclosure materials and affidavits show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)." *In re Wells*, - F.3d-,  2009 WL 961209, at *1 (6th Cir. 2009). Rule 56 requires a court, even where the motion is unopposed, to determine whether the moving party has established a right to relief as a matter of law  before the court may enter summary judgment. See *Donlin v. Watkins*, 814 F.2d 273, 277 (6th Cir. 1987); *Kendall v. Hoover Co.*, 751 F.2d 171, 173-74 (6th Cir. 1974).

5:08  CV 0686                                  4

*Incest with stepchildren:*

"[H]istory and tradition are the starting point but not in all cases the ending point of the substantive due process inquiry." *Lawrence v. Texas*, 539 U.S. at 572 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 857, 118 S.Ct. 1708, 140 L.Ed.2d 1042 (1998)(Kennedy, J., concurring).  In order to appreciate the extent of the liberty at stake, some historical consideration is necessary. *Id.*, 539 U.S. at 567-71, 123 S.Ct. at 2478-2479.

Incest was not a crime under the common law. See *Grossenbacher v. State,* 49 Ohio App. 451, 454, 3 O.O. 313, 197 N.E. 382 (1934); *People v Tobias*, 25 Cal. 4th 327, 331, 106 Cal. Rptr. 2d 80, 21 P.3d 758, 760 (2001)(citing *People v. Baker*, 69 Cal.2d 44, 49, 69 Cal. Rptr. 595, 442 P.2d 675 (1968)); *State v. Sauls*, 190 N.C. 810, 130 S.E. 848 (1925)(citing *State v. Keesler*, 78 N.C. 469 (1878)(dismissing indictment for defendant's improper intercourse with his daughter as not contrary to any statutory offense and unindictable under the common law)). [3] It is a statutory offense. *Ibid*. Early American jurisprudence as exemplified in South Carolina, applied the statute of 32 H.VIII, ch. 38, which declared " all persons to be lawful that be not prohibited by God's law to marry" with God's law supplied by the 18th chapter of the Book of Leviticus. While marriage contrary to God's

---

[3] "It is related that in the time of the Commonwealth in England, when the ruling powers found it for their interest to put on the semblance of extraordinary strictness and purity of morals, incest and wilful adultery were made capital crimes; but at the Restoration, when men from the abhorrence of the hypocrisy of the late times fell into a contrary extreme of licentiousness, it was not thought proper to renew the law of such unfashionable rigor; and these offences have been ever since left to the feeble coercion of the Spiritual Court according to the canon law. 4 Bl. 64; 2 Tomlin L. D. 160; Bish. Stat. Cr., §§ 725, 728; Bish. Mar. & Div. §§ 313, 315.

In most of the States of the Union incest is made an indictable offence by statute. Perhaps its rare occurrence in this State has caused the revolting crime to pass unnoticed by the Legislature."

*State v. Keesler*, 78 N.C. at 469.

5:08  CV 0686                                                          5

law was unlawful, the act of incest itself was not criminal.  See *State v. Barefoot*, 2 Rich. 209, 31

S.C.L. 209,1845 WL 2580 at * 3 (App. Ct. 1845).


The State of Ohio criminalized the offense of incest in 1835. [4] See *Grossenbacher,* 49 Ohio

App. at 454. Beginning in 1835, "sexual intercourse between a stepfather and a stepdaughter, who

had knowledge of their relationship, was incestuous." *Id.*  As is the situation today, there was a

"simpl[e] designat[ion of] the persons by the relationships in which they stood between whom sexual

intercourse was punished as an offense, (1 Swan & C. 405;)" and these relationships were "those

arising from marriage, as step-father and step-daughter, step-mother and step-son, . . . between one

party to the marriage and a blood relative of the other [.]" *Chinn v. State,*  47 Ohio St. 575, 580, 26

N.E. 986, 987 (1890).  In 1877 the definition of incest was amended to fornication between persons

"nearer of kin by consanguinity or affinity than cousins." *Grossenbacher*, 49 Ohio App. at 452;

*Chinn,* 47 Ohio St. at 580. Persons related by affinity included stepchildren. Compare

*Commonwealth v. Rahim*, 441 Mass. 273, 805 N.E.2d 13 (2004)( State's incest statute criminalized

only relationships by consanguinity, so there was no incest between step-father and step-daughter)[5]

; *Beam v. State*, 1 So.3d 331 335 & n. 2(Fla. App.5  2009)(distinguishing Connecticut law which

---

[4] This coincides with the same year Great Britain enacted a statute prohibiting incest. See *State v. Barefoot*, 2 Rich. 209, 31 S.C.L. 209,1845 WL 2580 at * 3.

[5] "The meaning of the term "consanguinity" is uncontroverted: it is defined as a "relationship by blood." 2 C. Torcia, Wharton's Criminal Law § 242 (15th ed.1994). See 3 Oxford English Dictionary 753 (2d ed.1989) ("condition of being of the same blood; relationship by descent from a common ancestor; blood-relationship [Opposed to affinity, i.e., relationship by marriage]"); Black's Law Dictionary 299 (7th ed.1999) ( "relationship of persons of the same blood or origin"). The meaning of "consanguinity" is distinguished from "affinity:" consanguinity is a blood relationship, while affinity is a nonblood relationship acquired through marriage. See 3 Oxford English Dictionary, supra.

*Com. v. Rahim,*  441 Mass. at 275-276, 805 N.E.2d at 16.

5:08  CV 0686                                                6

did not limit incest to strictly blood relations but extended the prohibition to step-relations). Under

this affinity definition a state appellate court in *Grossenbacher* affirmed that sexual intercourse

between a step-daughter and her step-father was prohibited. See *Grossenbacher*, 49 Ohio App. at

452-456. That decision marks an apparently rare event when such conduct was prosecuted under this

"affinity" definition of incest.  *Grossenbacher* is consistent with *State v. Youst*, another decision

based on  the "affinity" definition of incest which held that sexual intercourse between a father and

his adopted daughter, who was not a blood relation of either parent, was not incest.  See *State v.*

*Youst*, 74 Ohio App. 381, 29 O.O. 578,  59 N.E. 2d 167 (1943)(syllabus). In *Grossenbacher*, the

step-daughter was a blood relation of the wife.  See *Grossenbacher*, 49 Ohio App. at 452.


        Ohio returned to the former statutory format of defining incest by designation of

relationships in 1972. See 1972 H 511.  With this clarification and removal of obscure language,

prosecutions recommenced with more vigor against stepparents. See *State v. Dush*, 1978 WL 215125

(Ohio App. 9 Dist.); *State v. Riley*, 1980 WL 353434, (Ohio App. 10 Dist.); *State of Ohio v.*

*Hargrove,*  1982 WL 4697 (Ohio App. 1 Dist.) (" R.C. 2907.03(A)(5) is unambiguous and conveys

a clear and definite meaning; i.e., that a person is prohibited from engaging in sexual conduct with

another where the offender is the other person's stepparent."). Of course, Ohio's statutory prohibition

against sexual conduct between step-father and step-daughter "terminates with the death or divorce

of the mother." *Noble v. State*, 22 Ohio St. 541 (1872).


         In contrast, consensual stepparent / adult stepchild relationships are not criminalized in the

majority of this nation's jurisdictions.  For example, Montana Code Ann. §45-5-507 provides in its

5:08  CV 0686                              7

incest statute that "[c]onsent is a defense under this section to incest with or upon a stepson or stepdaughter, but consent is ineffective if the victim is less than 18 years old." In the State of Washington, age, not consent, is the crucial factor against its prohibition of sexual intercourse with a "descendant," defined as "stepchildren and adopted children under eighteen years of age." See West's Rev. Code of Wash. § 9A.64.020(3)(a); *State v. Farrington*, 35 Wash. App. 799, 669 P.2d 1275 (1983)(consent is not an issue in an incest charge). In the State of Nebraska, incest with stepchildren occurs only when the child is a "minor" under Neb. Rev. St. §28-703 ("any person who engages in sexual penetration with his or her minor stepchild commits incest."). The Supreme Court of Massachusetts has provided a thorough statutory comparison of state laws noting 20 states do not punish any form of affinal incest and seven states plus Massachusetts punish affinal incest only with children or when nonconsensual. See *Commonwealth v. Rahim*, 441 Mass. at 278-79 & n. 7-8, 805 N.E.2d at 17-18. Further, the Model Penal Code does not criminalize affinal incest. See ULA Model Penal Code §230.2 (and see explanatory note at Pt. II Art. 230); *Rahim*, 441 Mass. at 19, 805 N.E.2d at 280.  But in minority jurisdictions, as Ohio, neither age nor consent will negate the crime of incest. *E.g.*, *McCaskill v. State*, 55 Fla. 117, 45 So. 843, 845 (1908); *Smith v. State*, 6 S.W.3d 512 (Tenn. Crim App. 1999); *State v. Benson*, 81 Ohio App. 3d 697, 612 N.E.2d 337 (1992); *State v. Freeman*, 155 Ohio App.3d 492, 801 N.E. 2d 906 (2003); *People v. Facey*, 115 A.D. 11, 16,  499 N.Y.S.2d 517, 520 (N.Y.A.D. 4 Dept.1986)("Prosecutions involving consenting adults are rare.").


With the overthrow of Cromwell's Roundheads, Englishmen regained the disreputable liberty of incestuous relationships and this liberty continued through the time of the drafters of the

5:08  CV 0686                                    8

Constitution and Bill of Rights. The State of Ohio continues to enforce a law historically rooted in

1835, outlawing conduct which is not criminal in the majority of this nation's jurisdictions.

*Lowe's ground for federal habeas corpus review:*

> **GROUND ONE**:  The State of Ohio violated Petitioner Lowe's fundamental right
> to privacy to engage in adult consensual sexual activities in the home as guaranteed
> by the Due Process Clause of the Fourteenth Amendment when it convicted
> Petitioner Lowe for sexual battery, per R. C. §2907.03(A)(5), on the sole basis of his
> status as a stepparent.

>> A.  The United States Supreme Court in *Lawrence v. Texas*, 539 U.S.
>> 558 (2003), recognized a fundamental right to privacy to engage in
>> adult consensual sex.

>> B. The Ohio Supreme Court unreasonably applied the holding of
>> *Lawrence v. Texas* by failing to recognize that *Lawrence* established
>> a fundamental right to privacy in adult consensual sex and therefore
>> strict scrutiny should have been applied when review R. C.
>> §2907.03(A)(5).

This ground presents a substantive due process claim springing from the Fifth and Fourteenth

Amendments and their guarantee of a "fundamental" liberty interest that no government may

infringe "*at all,* no matter what process is provided, unless the infringement is narrowly tailored to

serve a compelling state interest. (emphasis in original)" *Reno v. Flores*, 507 U.S. 292, 301-02, 113

S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993)(citing *Bowers v. Hardwick*, 478 U.S. 186, 191, 106 S.Ct.

2841, 2844, 92 L.Ed.2d 140 (1986)); and see *Planned Parenthood of Southeastern Pennsylvania v.*

*Casey,* 505 U.S. 833, 847, 112 S.Ct. 2791, 2804, 120 L.Ed.2d 674 (1992)("all fundamental rights

comprised within the term liberty are protected by the Federal Constitution from invasion by the

States." ).  Adjudicating such claims requires "a careful description of the asserted right," which is

the first issue in this area. *Reno*, 507 U.S. at 302, 113 S.Ct. at 1447; *Blau v. Fort Thomas Public*

5:08  CV 0686                                    9

*School District*, 401 F.3d 381, 393 (6ᵗʰ Cir. 2005). The State of Ohio has outlawed sexual conduct between a step-father and adult  consenting step-daughter and thereby intruded into Lowe's private life.


*Lawrence v. Texas overview:*

In  *Lawrence v. Texas*, the U.S. Supreme Court concluded that a Texas statute criminalizing sodomy between persons of the same sex constituted a violation of substantive Due Process, and in so doing overruled *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). See *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003).  *Bowers* had held that homosexuals did not possess fundamental rights to engage in sodomy, and that a rational basis existed that homosexual sodomy was immoral and unacceptable based on the presumed belief of a majority of the electorate in Georgia.


In *Lawrence*, the Supreme Court certified an Equal Protection argument and a Due Process argument, but resolved the case as a violation of substantive Due Process under the Fourteenth Amendment, stating that "[t]he Texas statute furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual."  See *Lawrence*, 539 U.S. at 564, 578, 123 S.Ct. at 2476, 2484.The question certified and answered positively in *Lawrence v. Texas* was "[w]hether  petitioner's criminal convictions for adult consensual intimacy in the home violate their vital interests in liberty and privacy protected by the Due Process Clause of the Fourteenth Amendment." *Id.*, 539 U.S. at 564, 123 S.Ct. at 2476. This expansive phrasing extends well beyond same sex relationships.  However, the Supreme Court reviewed only a Texas statute which applied

5:08  CV 0686                                    10

to same sex  partners. Consideration of the issue as a matter of  Equal Protection was bypassed

because the Court did not wish to commence a debate over whether redrafting the statute to expand

the prohibition against same sex partners to include partners of different sexes would  cure a denial

of Equal Protection (as was the case in the Georgia sodomy statute scrutinized in *Bowers*). *Id*., 539

U.S. at 574-75, 123 S.Ct. at 2482.


    *Bowers v. Hardwick*  had  framed  the  issue  before  the  Court  as  "whether  the  Federal

Constitution  confers  a  fundamental  right  upon  homosexuals  to  engage  in  sodomy  and  hence

invalidates the laws of the many States that still make such conduct illegal and have done so for a

very long time." *Lawrence*, 539 U.S. at 567 (citing *Bowers*, 478 U.S. 189, 190, 106 S.Ct. 2841, 92

L.Ed.2d 140 (1986)).  *Lawrence* stated that *Bower*'s framing of the issue "discloses the Court's own

failure to appreciate the extent of the liberty at stake." *Id.*, 539 U.S. at 567, 123 S. Ct. at 2478.


    At first blush it might appear that *Lawrence* has no relevance since the statute at issue in

*Lawrence* outlawed only one form of  sexual conduct, sodomy, between partners of the same sex.

Justice Scalia's dissenting opinion concluded that "nowhere does the Court's opinion declare that

homosexual sodomy is a 'fundamental right' under the Due Process Clause.  *Lawrence,* 539 U.S.

at 586, 123 S.Ct. at 2488.  However, the majority in *Lawrence* read *Casey* as confirming a

constitutional protection to "personal decisions relating to marriage, procreation, contraception,

family relationships, child rearing, and education.  See *Lawrence*, 539 U.S. at 573-74, 123 S.Ct. at

2481. This liberty was defined with aspirational language as "the right to define one's own concept

of existence, of meaning of the universe, and of the mystery of human life. Beliefs about these

matters could not define the attributes of personhood were they formed under compulsion of the State" *Id*., 539 U.S. at 574, 123 S.Ct. at 2481(quoting *Casey*, 505 U.S. at 851). With this preamble, the decision in *Bowers* was found to deny "this right" of autonomy, which the Supreme Court stated was conferred on homosexual and heterosexual relationships. *Lawrence*, 539 U.S. at 574, 123 S.Ct. at 2482. Further, the Supreme Court quoted Justice Stevens' dissent from *Bowers*, for the proposition that "individual decisions by married persons concerning the intimacies of their physical relationship . . . are a form of 'liberty' protected by the Due Process Clause" and "this protection extends to intimate choices by unmarried as well as married persons." *Lawrence*, 539 U.S. at 578, 123 S.Ct. at 2483 (quoting *Bowers*, 478 U.S. at 216). Thus, "[t]he State cannot demean [petitioners'] existence or control their destiny by making their private sexual conduct a crime." *Lawrence,* 539 U.S. at 579, 123 S.Ct. 2484.

In his dissent in *Lawrence*, Justice Scalia expressed that the State need only a rational basis to sustain the prohibition against same sex sodomy as well as adult incest:

> No purpose to discriminate against men or women as a class can be gleaned from the Texas law, so rational-basis review applies. That review is readily satisfied here by the same rational basis that satisfied it in *Bowers*-society's belief that certain forms of sexual behavior are "immoral and unacceptable," 478 U.S., at 196, 106 S.Ct. 2841. This is the same justification that supports many other laws regulating sexual behavior that make a distinction based upon the identity of the partner-for example, laws against adultery, fornication, and *adult incest*, and laws refusing to recognize homosexual marriage (emphasis supplied).

*Lawrence v. Texas,* 539 U.S. at 600, 123 S.Ct. at 2495 - 2496 (Scalia, J. dissenting).

Lowe's argument that *Lawrence* set out a fundamental right of privacy subject to the doctrine of strict scrutiny is the converse of Judge Scalia's reasoning. However, following *Lawrence,* the

5:08  CV 0686                                        12

question which is confronting this court and has confronted other courts is what are the contours of

the "liberty at stake" from *Lawrence*.


*The Ohio Supreme Court's Decision:*

      The Ohio Supreme Court held that Ohio Rev. Code §2907.03(A)(5) was "constitutional as

applied to consensual sexual conduct between a stepparent and adult stepchild, since it bears a

rational relationship to the state's legitimate interest in protecting the family."  *State v. Lowe,* 112

Ohio St.3d 507, 861 N.E.2d 512, 2007-Ohio-606 (2007)(syllabus).  In reaching this conclusion the

Court began with the rules of statutory construction to find that the statute's plain meaning

criminalized "all sexual conduct falling within its purview regardless of a victim's age or consent."

*Id*., 112 Ohio St.3d at 509. In assessing the state's diminishment of the "liberty" of incestuous

relationships under the Due Process Clause of the Fourteenth Amendment, the Ohio Supreme Court

acknowledged the two available tests under the Due Process Clause of either strict scrutiny or

rational basis, but found that incest was not a fundamental right and consequently applied the

rational basis test. With reference to Lowe's assertion of such a liberty in light of  *Lawrence v.*

*Texas*, the Ohio Supreme Court reasoned:

> Lowe cites *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508, to
> argue that he has a constitutionally protected liberty interest to engage in private,
> consensual, adult sexual conduct with his stepdaughter when that activity does not
> involve minors or persons who may be easily injured or coerced. In *Lawrence*, a
> Texas statute criminalizing homosexual conduct was held to be unconstitutional as
> applied to adult males who had engaged in private and consensual acts of sodomy.
> Lowe contends that Lawrence named a new fundamental right to engage in
> consensual sex in the privacy of one's home.

> However, the statute in *Lawrence* was subjected to a rational-basis rather than a
> strict-scrutiny test, with the court concluding that the Texas statute furthered no

legitimate state interest that could justify intrusion into an individual's personal and private life. *Id.* at 578, 123 S.Ct. 2472, 156 L.Ed.2d 508. In using a rational-basis test to strike down the Texas statute, the court declined to announce a new fundamental right arising from the case.

In addition to emphasizing that the court in using a rational-basis test did not name a new fundamental right, the state in this case distinguishes *Lawrence* as being limited to consensual sexual conduct between unrelated adults. Lowe and his stepdaughter were not unrelated. The state argues that since Lowe has no fundamental right in this case, and the state has a legitimate interest in prohibiting incestuous relations and in protecting the family unit and family relationships, the rational-basis test should apply. Lowe argues for strict scrutiny of R.C. 2907.03(A)(5) and contends that Ohio's incest statute is not the least restrictive means for protecting the state's interest.

We agree with the state that a rational-basis test should be used to analyze the statute. *Lawrence* did not announce a "fundamental" right to all consensual adult sexual activity, let alone consensual sex with one's adult children or stepchildren. Because Lowe's claimed liberty interest in sexual activity with his stepdaughter is not a fundamental right, the statute affecting it need only have a reasonable relationship to some legitimate governmental interest.

Using the rational-basis test, we conclude that, as applied in this case, Ohio's statute serves the legitimate state interest of protecting the family unit and family relationships. While it is not enough under the rational-basis test for the government to just announce a noble purpose behind a statute, the statute will pass if it is reasonably related to any legitimate state purpose. *Arrington v. DaimlerChrysler Corp.*, 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, ¶ 38. Ohio has a tradition of acknowledging the "importance of maintaining the family unit." *In re Cunningham* (1979), 59 Ohio St.2d 100, 104, 13 O.O.3d 78, 391 N.E.2d 1034. A sexual relationship between a parent and child or a stepparent and stepchild is especially destructive to the family unit. R.C. 2907.03(A)(5) was designed to protect the family unit by criminalizing incest in Ohio. Stepchildren and adopted children have been included as possible victims of the crime of incest because society is concerned with the integrity of the family, including step and adoptive relationships as well as blood relationships, and sexual activity is equally disruptive, whatever the makeup of the family. See *Camp v. State* (1986), 288 Ark. 269, 704 S.W.2d 617. As the "traditional family unit has become less and less traditional, * * * the legislature wisely recognized that the parental role can be assumed by persons other than biological parents, and that sexual conduct by someone assuming that role can be just as damaging to a child." *State v. Noggle* (1993), 67 Ohio St.3d 31, 33, 615 N.E.2d 1040. This reasoning applies not only to minor children, but to adult children as well.

5:08  CV 0686                              14

Moreover,  parents do not cease being parents-whether natural parents, stepparents, or adoptive parents-when their minor child reaches the age of majority.

 Accordingly, as applied in this case, R.C. 2907.03(A)(5) bears a rational relationship to the legitimate state interest in protecting the family, because it reasonably advances its goal of protection of the family unit from the destructive influence of sexual relationships between parents or stepparents and their children or stepchildren. If Lowe divorced his wife and no longer was a stepparent to his wife's daughter, the stepparent-stepchild relationship would be dissolved. The statute would no longer apply in that case.

*State v. Lowe*, 112 Ohio St.3d at 511-12, 861 N.E.2d at 517-18.

### Standard of Review under 28 U.S.C. §2254(d):

Federal habeas corpus review is conducted under Congressionally circumscribed rules set out in §2254(d) which allow the writ to be granted in situations where the state court decision is "contrary to" or "an unreasonable application" of "clearly established" Federal law as set forth by the Supreme Court of the United States or when there is an unreasonable determination of the facts.

### I.  There is no "clearly established Federal law" of a fundamental right to consensual adult sex:

The phrase "clearly established Federal law" refers to holdings, as opposed to *dicta,* of the U.S. Supreme Court at the time of the relevant state court decision.  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.E.d2d 389 (2000);  *Bell v. Cone*, 535 U.S. 685, 698, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914(2002). "[I]t is not  'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court."   *Knowles  v.  Mirzayance.*  -U.S.-,129S.Ct.1411,1419

5:08 CV 0686                                    15

(2009)(quoting *Wright v. Van Patten*, 552 U.S. ----, 128 S.Ct., 743,746-47, 169 L.Ed.2d 583 (2008)

(*per curiam*); *Schriro v. Landrigan*, 550 U.S. 465, 478, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007);

*Carey v. Musladin*, 549 U.S. 70, 76-77, 127 S.Ct. 649, 654, 166 L.Ed.2d 482 (2006).


One would think then that the application of "clearly established" Federal law should be

simple; no holding or specific legal rule on point, therefor no unreasonable application. The Sixth

Circuit, though, has stated that "clearly established law" "encompasses more that just bright-line

rules laid down by the [Supreme] Court," and "includes legal principles and standards enunciated

in the Court's decisions." *Awkal v. Mitchell*, 559 F.3d 456, 462 (6th Cir. 2009)(quoting *Taylor v.

Withrow*, 288 F.3d 846, 850 (6th Cir. 2002)). As the U.S. Supreme Court has stated that "clearly

established" law is "the governing legal principle or principles set forth by the Supreme Court at the

time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. at 71-72, 123 S.Ct. at 1172

- 1173(citing *Williams v. Taylor,* 529 U.S. at 405, 413, 120 S.Ct. 1495; *Bell v. Cone*, 535 U.S. at

698, 122 S.Ct. 1843)). But then, what is the squarely established legal principle? Justice Stevens'

concurrence in *Carey v. Musladin* lends uncertainty with his criticism that the Supreme Court was

relegating guiding principles to the category of *dicta*, so that the definition of "clearly established"

law had shifted from guiding principles to the narrow holding in the case. [6]

---

[6] "Virtually every one of the Court's opinions announcing a new application of a constitutional principle
contains some explanatory language that is intended to provide guidance to lawyers and judges in future cases. See, e.g.,
*Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *Strickland,* 466 U.S. 668, 104 S.Ct.
2052; *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); see also *Marbury v. Madison*, 1 Cranch
137, 2 L.Ed. 60 (1803). It is quite wrong to invite state court judges to discount the importance of such guidance on the
ground that it may not have been strictly necessary as an explanation of the Court's specific holding in the case. Cf.
*County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U.S. 573, 668, 109 S.Ct. 3086,
106 L.Ed.2d 472 (1989) (KENNEDY, J., concurring in judgment in part and dissenting in part) ("As a general rule, the
principle of stare decisis directs us to adhere not only to the holdings of our prior cases, but also their explications of the
governing rules of law"); *Sheet Metal Workers v. EEOC,* 478 U.S. 421, 490, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986)
(O'Connor, J., concurring in part and dissenting in part) ("Although technically dicta, ... an important part of the Court's

5:08  CV 0686                                    16

In an effort to answer that question of what constitutes the governing legal principle, the

Supreme Court in *Wright v. Van Patten,* restressed a same test or standard of review criterion. *Id*.,

552 U.S.120, 128 S.Ct.743, 169 L.Ed.2d 583 (2008).  *Wright* involved a question over whether the

right to counsel was violated when defense counsel appeared *via* speaker phone at a plea hearing,

and that "although the [Supreme] Court articulated the test for inherent prejudice" it had never

applied that test before to the circumstances presented.  *Id*., 552 U.S.120, 128 S.Ct. at 745 (quoting

*Musladin*, 549 U.S. at 70, 127 S.Ct. at 654). [7]  Therefore, one could conclude that the same standard

or test used in Supreme Court review plus similar circumstances equals the  squarely established

legal principle, hence "clearly established" law.

---

rationale for the result that it reache[s] is entitled to greater weight ..."). The text of the Antiterrorism and Effective Death Penalty Act of 1996 itself provides sufficient obstacles to obtaining habeas relief without placing a judicial thumb on the warden's side of the scales."

*Carey v. Musladin,*  549 U.S. at 79, 127 S.Ct. at 655 (Stevens J., concurring).

    [7]  "No decision of this Court, however, squarely addresses the issue in this case, see *Deppisch*, supra, at 1040 (noting that this case "presents [a] novel ... question"), or clearly establishes that *Cronic* should replace *Strickland* in this novel factual context. Our precedents do not clearly hold that counsel's participation by speaker phone should be treated as a "complete denial of counsel," on par with total absence. Even if we agree with Van Patten that a lawyer physically present will tend to perform better than one on the phone, it does not necessarily follow that mere telephone contact amounted to total absence or "prevented [counsel] from assisting the accused," so as to entail application of *Cronic*. The question is not whether counsel in those circumstances will perform less well than he otherwise would, but whether the circumstances are likely to result in such poor performance that an inquiry into its effects would not be worth the time. Cf. *United States v. Gonzalez-Lopez*, 548 U.S. ----, ----, 126 S.Ct. 2557, 2563, 165 L.Ed.2d 409 (2006) (Sixth Amendment ensures " effective (not mistake-free) representation" (emphasis in original)). Our cases provide no categorical answer to this question, and for that matter the several proceedings in this case hardly point toward one. The Wisconsin Court of Appeals held counsel's performance by speaker phone to be constitutionally effective; neither the Magistrate Judge, the District Court, nor the Seventh Circuit disputed this conclusion; and the Seventh Circuit itself stated that "[u]nder \*747 *Strickland*, it seems clear Van Patten would have no viable claim." *Deppisch*, 434 F.3d, at 1042.

Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.' " *Musladin*, 549 U.S., at ----, 127 S.Ct. 649, 654 (quoting 28 U.S.C. § 2254(d)(1)). Under the explicit terms of § 2254(d)(1), therefore, relief is unauthorized."

*Wright v. Van Patten*, 552 U.S. 120,  128 S.Ct. 743, 746 -747, 169 L.Ed.2d 583 (2008)
128 S.Ct. 743

5:08  CV 0686                                              17

What is "clearly established" Federal law becomes a prominent issue in this matter. The Supreme Court in *Lawrence* reviewed a narrowly circumscribed set of facts, but in so doing clothed its decision with ethereal statements which have been a source of debate among jurists. Recognizing *Lawrence* as setting out a legal principle of a broad "fundamental" right, the dissenting opinion in *Williams v. Attorney General of Ala.*, interpreted the legal principle to be derived  as a correlate with the certified question over adult consensual sexual intimacy. See *id.*, 378 F.3d 1232, 1252 (11th Cir. 2004)(Barkett, J. dissenting).  *Doe v. Miller*, 298 F. Supp. 2d 844, 871 (S.D. Iowa 2004), held that Iowa's sex offender registration requirements were unconstitutional, and listed *Lawrence* together with *Griswold v. Connecticut* as establishing a fundamental right to privacy and choice in one's personal and sexual relationships. [8]

Other jurists, however,  have read *Lawrence* to set out a narrow principle limited to same sex conduct. See *Muth v. Frank,* 412 F.3d 808, 819( 7th Cir. 2005)(Evans, J. concurring)("To argue that *Lawrence v. Texas* renders laws prohibiting sex between a brother and a sister unconstitutional demeans the importance of its holding which deals a fatal blow to criminal laws aimed at punishing homosexuals); *U.S. v. Thompson*, 458 F. Supp.2d 730, (N.D. Ind. 2006)("*Lawrence* held only that a state cannot enact laws that criminalize homosexual sodomy"); *Fields v. Palmdale Sch. Dist.*, 271 F. Supp. 2d 1217, 1221 (C.D. Cal. 2003)(*Lawrence* established "right to engage in private homosexual conduct")).

---

[8]   Judgment reversed by *Doe v. Miller*, 405 F.3d 700 (8th Cir. 2005).

5:08  CV 0686                                18

There is no consensus on the legal principle to be derived from *Lawrence v. Texas*.  Jurists have made choices on whether *Lawrence* sets out a broad or narrow legal principle in overruling *Bowers v. Hardwick*, but this divergence of opinion alone establishes that there is no "clearly established" Federal law on the state's ability to proscribe sexual conduct. If a choice needs to be made then it would be more correct to narrowly construe *Lawrence,* so as not to unnecessarily disturb the prohibitions which were not before the Supreme Court in *Lawrence*, such as adultery, [9] prostitution [10], polygamy [11], or incest (heterosexual or homosexual). [12]  The  scrutiny of the Texas anti-sodomy statute in *Lawrence* did not involve similar circumstances of prohibited sexual conduct due to familial relationship.  Justice Scalia's expansive language in his dissent with reference to adult incest as one of the forms of prohibited sexual conduct which he believed should be reviewed under a rational basis standard, does not lead to the conclusion that the majority's opinion expressed the opposite view and conferred "fundamental liberty" status to adult incest.

---

[9]     *Beecham v. Henderson County, Tenn.*, 422 F.3d 372 (6th Cir. 2005).

[10]     *U.S. v. Thompson*, 458 F. Supp.2d 730, (N.D. Ind. 2006). And see *Lawrence v. Texas,*:
The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution.
*Id.,* 539 U.S. at 578, 123 S.Ct. at 2484.

[11]     *Bronson v. Swenson*, 500 F.3d 1099 (10th Cir. 2007)(Challenge to Utah's anti-polygamy statute dismissed for lack of standing due to lack of credible threat of prosecution of husband, wife, and his fiancee).

[12]     *Muth v. Frank*, 412 F.3d 808 (7th Cir. 2005); *People v. Scott*, 157 Cal App. 4th 189, 68 Cal Rptr. 3d 592 (2007); *State v. John F.M.*, 285 Conn. 528, 940 A.2d 755 (2008)(step-parent). Further, Lowe does not advance an argument, nor is there any reason to consider whether Ohio's sexual battery statute would be unconstitutionally applied in light of *Lawrence* in the instance of consensual sexual conduct between a step-father and his adult step-son. That situation is readily distinguishable since the State's prohibition is not simply a matter of sexual conduct based on sex, but a prohibition based on familial relationship.

5:08  CV 0686                                    19

Further, as *Musladin* and *Wright* instruct, the district court must look to precedential application of the constitutional test or standard used in *Lawrence* for violations of Due Process. As shall be explained later, jurists are unsure which test was applied, strict scrutiny, rational basis or a third type of test, one of "intermediate scrutiny." [13] This uncertainty alone supports a conclusion that there is no "clearly established" Federal law to apply to this instance of adult incest, contrary to Lowe's argument that there is a broad privacy umbrella for nearly all sexual activity among consenting adults.


So, the quick answer is that the Ohio Supreme Court's decision in *State v. Lowe*, was not an unreasonable application of clearly established Federal law, since there is no "clearly established" principle set out in the holding of *Lawrence v. Texas,* let alone a clear principle applicable to incestuous relationships of opposite sex partners.  This lack of "clearly established" law is buttressed by the lack of multiple applications of the same standard of review to the circumstances presented.

---

[13]   See *Montgomery v. Carr,* 101 F.3d 1117, 1121 -1122 (6ᵗʰ Cir.1996):
Intermediate scrutiny, as its name suggests, was the most recent tier of constitutional review to develop. Its genesis lies in the Supreme Court's desire to fashion constitutional protections for women, a group that has been historically victimized by intense and irrational discrimination, but that cannot properly be called either "discrete" or "insular." A trilogy of cases taken together is generally regarded as having created the intermediate tier of scrutiny. See *Reed v. Reed, 404 U.S.* 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) (striking down Idaho statute that gave males preference over females in appointment as administrators of estates); *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (plurality) (Brennan, J.) (discrimination in the provision of fringe benefits to spouses of female armed services members was unconstitutional); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (statute prohibiting the sale of "nonintoxicating" 3.2% beer to males under 21 and females under 18 was unconstitutional).

5:08  CV 0686                                          20

*II.  Ohio Supreme Court decision is not an unreasonable application of Lawrence v. Texas:*

*A.  Unreasonable application standard of review for Habeas Corpus:*

Lowe anticipated that the "unreasonable application" standard of habeas review would apply to his ground, and maintains that in *Lawrence*, as in *Planned Parenthood of Southeastern Pa. v Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), the U.S. Supreme Court recognized a "fundamental right" within the domain of privacy, procreation, reproduction and sexual activity, which the Ohio Supreme Court unreasonably applied in upholding Ohio's prohibition against consensual sexual conduct between adults related only by affinity. [14] Assuming that a narrow legal principle applicable to sodomites is incomplete, and *Lawrence v. Texas* sets out a broad legal principle correlate with the question certified of adult consensual sexual intimacy, then the Ohio Supreme Court's decision is nonetheless not an unreasonable application of *Lawrence v. Texas,* because *Lawrence* did not define the appropriate standard of review for this fundamental right, and did not clearly apply  strict scrutiny review.

"A state-court decision involves an unreasonable application of Supreme Court precedent 'if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case' or if the state court either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new

---

[14] Not in contention is the right of intimate association guaranteed under the penumbra of  First Amendment protected privacy. See *Beecham v. Henderson County, Tenn.*, 422 F.3d 372, 375 (6ᵗʰ Cir. 2005); *Griswold v. Connecticut*, 381 U.S. 479, 484, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); compare *Bowers v. Hardwick*, 478 U.S. 186, 195-96, 106 S.Ct. 2841, 2846, 92 L.Ed.2d 140 (1986)(Explaining with regard to the First Amendment privacy,"it would be difficult, except by fiat, to limit the claimed right to homosexual conduct  while leaving exposed to prosecution adultery, incest, and other sexual crimes even though they are committed in the home.").

5:08  CV 0686                                      21

context." *Seymour v. Walker,* 224 F.3d 542, 549 (6th Cir. 2000), *cert. denied*, 532 U.S. 989

(2001)(quoting *Williams v. Taylor*, 529 U.S. 362, 407-08, 120 S.Ct. 1495, 1520, 146 L.Ed.2d 389

(2000)). When the state court has rendered a decision applying the correct federal standard, the

federal reviewing court  may not grant the writ in its "independent review of the legal question."

*Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).  Lowe must

show an "unreasonable application" of clearly established Federal law in the state decision. See

*Rompilla v. Beard*, 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005); *Williams v.*

*Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Wiggins v. Smith*, 539 U.S. 510,

520-21, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003). The unreasonable application of Supreme

Court precedent must, moreover, be "objectively unreasonable."  *Williams,* 529 U.S. at 409, 120

S.Ct. at 1521; *Wiggins, supra*, at 520-21.


*B.  Rational basis standard of review was not Unreasonable Application of Lawrence:*

The Ohio Supreme Court framed the issue before it as whether Ohio's incest statute is

constitutional as applied to the consensual sexual conduct between a stepparent and adult stepchild.

See  *State v. Lowe*, 112 Ohio St.3d at 507 861 N.E.2d at 514. Lowe has no dispute over this

description of the right asserted.  The Ohio Supreme Court read the decision in *Lawrence* as

involving an application of the "rational basis test," which is associated with non-fundamental

rights. See *State v. Lowe*, 112 Ohio St.3d at 511, 861 N.E.2d at 517.  As Justice Scalia pointed out

5:08  CV 0686                                    22

in the dissenting opinion, the majority had not applied the "strict scrutiny" test associated with "fundamental rights." See *Lawrence*, 539 U.S. at 586, 123 S.Ct. at 2488. **15**

      *Planned Parenthood of Southeastern Pennsylvania v. Casey,* held that "limitations on the right of privacy are permissible only if they survive 'strict' constitutional scrutiny-that is, only if the governmental entity imposing the restriction can demonstrate that the limitation is both necessary and narrowly tailored to serve a compelling governmental interest." *Id.*, 505 U.S. at 929, 112 S.Ct. at 2847 (J. Blackmun, concurring in part)(citing *Griswold v. Connecticut*, 381 U.S. 479, 485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965)). This doctrine arose to protect "discrete and insular minorities" from legislative prejudice. See *Montgomery v. Carr*, 101 F.3d 1117,  1121 (6th Cir. 1996)(citing *U.S. v. Carolene Prods. Co.*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed.1234 ( 1938)).  On the other hand, a state law generally passes constitutional muster under the Due Process Clause when it has a rational relationship to its purpose or is not arbitrary government conduct. See *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 490 & n.4, 75 S.Ct. 461, 466-66 & n. 4, 99 L.Ed. 563 (1955); *City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation,* 538 U.S. 188, 198-99, 123 S.Ct. 1389, 1396, 155 L.Ed.2d 349 (2003). Then, there is the intermediate approach used to protect less discrete and insular groups, such as women. See *Montgomery v. Carr*, 101 F.3d at 1121-22. Since the Supreme Court's review is ,at least in theory, restricted to one of these standards of review, this opens the way to the possibility of  "reverse engineering" *Lawrence*

---

     15  "Instead the Court simply describes petitioners' conduct  as 'an exercise of their liberty'-which it undoubtedly is-and proceeds to apply an unheard-of form of rational-basis review that will have far-reaching implications beyond this case. *Ante*, at 2476."

*Lawrence,* 539 U.S. at 586, 123 S.Ct. at 2488 (J. Scalia, dissenting).

5:08  CV 0686                                            23

*v. Texas* to determine whether a "fundamental liberty" was at stake by the type of standard this

liberty was measured by: strict scrutiny; rational basis ; or, intermediate scrutiny.  Alas, there is no

consensus on which standard of review had been  used by the Supreme Court in *Lawrence*.


In *Cook v. Gates*, the First Circuit collected cases and law review articles which discussed

*Lawrence v. Texas,* and divided them between rational basis, strict construction, or intermediate

standards of review. *Id.*, 528 F.3d 42, 51 (1ˢᵗ Cir. 2008), pet. for *cert.* filed Dec. 23, 2008.  The First

Circuit supported the conclusion that "*Lawrence*'s doctrinal approach is 'difficult to pin down'" (*Id.*,

528 F.3d at 52), with erudite authority, citing Nan D. Hunter, *Living with Lawrence*, 88 Minn. L.

Rev. 1103 (2004). Under the category of cases and law reviews which interpreted *Lawrence* as an

application of strict scrutiny, *Cook* listed:

> *Williams [v. Attorney General of Ala.]*, 378 F.3d at 1252 (Barkett, J., dissenting);
> *Fields v. Palmdale Sch. Dist.*, 271 F.Supp.2d 1217, 1221 (C.D.Cal.2003); *Doe v.
> Miller*, 298 F.Supp.2d 844, 871 (S.D.Iowa 2004), rev'd on other grounds, 405 F.3d
> 700 (8th Cir.2005); *Hudson Valley Black Press v. IRS,* 307 F.Supp.2d 543, 548
> (S.D.N.Y.2004); see also Donald H.J. Hermann, *Pulling the Fig Leaf Off the Right
> of Privacy: Sex and the Constitution*, 54 DePaul L.Rev. 909, 969 (2005); Laurence
> H. Tribe, *Lawrence v. Texas: The Fundamental Right that Dare Not Speak Its Name*,
> 117 Harv. L.Rev. 1893, 1917 (2004).

*Cook v. Gates,* 528 F.3d at 51 n. 6.


Next, under the category of federal and state cases which have interpreted *Lawrence* as an

application of the rational basis approach, *Cook* listed the Ohio Supreme Court's decision in *State

v Lowe*, and :

> *Sylvester v. Fogley*, 465 F.3d 851, 858 (8th Cir.2006); *Muth v. Frank*, 412 F.3d 808,
> 818 (7th Cir.2005); *Williams v. Att'y Gen. of Ala.*, 378 F.3d 1232, 1238 (11th
> Cir.2004); *Lofton v. Sec'y of Dept. of Children & Family Servs.*, 358 F.3d 804 (11th

> Cir.2004); *Witt v. U.S. Dept. of Air Force,* 444 F.Supp.2d 1138, 1143
> (W.D.Wash.2006); *United States v. Extreme Assocs., Inc.,* 352 F.Supp.2d 578, 591
> (W.D.Pa.2005); *Conaway v. Deane*, 401 Md. 219, 310, 932 A.2d 571 (Md.2007);
> *Ex parte Morales*, 212 S.W.3d 483, 493 (Tex.App.2006); *State v. Limon*, 280 Kan.
> 275, 122 P.3d 22, 29 (2005); *Martin v. Ziherl*, 269 Va. 35, 607 S.E.2d 367, 370
> (2005); *State v. Clinkenbeard*, 130 Wash.App. 552, 123 P.3d 872, 878 (2005).

*Cook v. Gates,* 528 F.3d at 51 n.5.


The First Circuit itself rejected both doctrinal approaches and opted for the intermediate

approach of balancing state and individual interests. *Cook*, 528 F.3d at 52-53. However, these cases

have not been cited in order to weigh which standard of review is correct, but for the point that an

application of any of the three standards of review is objectively *reasonable*. Presuming that a broad

legal principle that protects adult incest is to be derived from *Lawrence*, that liberty is not

necessarily entitled to strict scrutiny review against a compelling state interest.


Furthermore, there are liberties and then there are "fundamental" liberties. For a liberty to

be fundamental it must be "objectively, 'deeply rooted in the Nation's history and tradition'" and

"implicit in the concept of ordered liberty" so "neither liberty nor justice would exist if they were

sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772

(1997)(quoting *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 503, 97 S.Ct. 1932, 1938, 52

L.Ed.2d 531 (1977); *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674

(1934); *Palko v. Connecticut*, 302 U.S. 319, 325, 326, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)).

There is absolutely no indication in *Lawrence* that sodomy is deeply rooted in history and tradition.

Although *Lawrence* placed in its historical context- it was tolerated in the early portion this nation's

history. There is no indication in *Lawrence* that sodomy is a fundamental to ordered liberty. The

same can certainly be said about adult incest. It was not banned under common law, but that does not raise its status to a celebrated event deeply rooted in history and tradition. Ohio's declaration of its unlawfulness does not disrupt the functioning of society and deny justice. Incest, like sodomy and abortion, can be reasonably viewed as a lesser liberty deserving of lesser protection.  See *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. at 966, 112 S.Ct. at 2867 (Rehnquist, C.J., concurring and dissenting in part)("[A]bortion is a form of liberty protected by the Due Process Clause, but States may regulate abortion procedures in ways rationally related to a legitimate state interest.").  The Ohio Supreme Court's decision to subject the state prohibition of sexual relations between a step-father and adult step-child to rational basis scrutiny is not an unreasonable application of *Lawrence* or other Supreme Court rulings regarding intimate sexually-related matters. **16**

      As of yet, the Supreme Court has not concretely defined "objectively unreasonable," but it has criticized the Fourth Circuit's interpretation of the phrase as requiring an application of federal law "in a manner that reasonable jurists would all agree is unreasonable." See *Williams v. Taylor*, 529 U.S. at 409-11, 120 S.Ct. at 1521-22. **17**  Post-*Williams*, the Second Circuit has concluded that

---

      16  Lowe does not contend that the Ohio Supreme Court's expounded rationale of protection of the family is not a legitimate state interest. And see *In re Marriage Cases,* 43 Cal.4th 757, 829 n.52, 183 P.3d 384, 434 n.52, 76 Cal.Rptr.3d 683, 742 (2008)("Although the historic disparagement of and discrimination against gay individuals  and gay couples clearly is no longer constitutionally permissible, the state continues to have a strong and adequate justification for refusing to officially sanction polygamous or incestuous relationships because of their potentially detrimental effect on a sound family environment. (citations omitted).

      17  "Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect." Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

5:08 CV 0686                              26

an objectively unreasonable application of Supreme Court precedent "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists'." *Henry v. Poule*, 409 F.3d 48, 68 (2d. Cir 2005); *Francis v. Stone*, 221 F.3d 100, 109 (2d. Cir. 2000). In the Sixth Circuit, the panels have on occasion applied a definition of "not debatable among reasonable jurists or used similar wording. See *Joshua v. Dewitt*, 341 F.3d 430, 436-37 (6th Cir. 2003); *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998); *Casnave v. Lavigne*, 169 Fed. Appx, 435, 442 (6th Cir. Feb. 9, 2006). This standard, though, resonates closely to the Fourth Circuit's criticized definition which tends to lean toward a subjective standard of review. See *Miller v. Webb*, 385 F.3d 666, 671-72 (6th Cir.2004); *Staley v. Jones*, 239 F.3d 769, 774 n. 1 (6th Cir. 2001); *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). In *Staley* and *Harris* district courts were left to their own devices in applying the nebulous *Williams* standard of "unreasonable application" of federal law.


Granted, the Supreme Court has counseled against, " transform[ing] the inquiry into a subjective one by resting its determination instead on the simple fact that at least one of the Nation's jurists has applied the relevant federal law in the same manner the state court did in the habeas petitioner's case." *Williams v. Taylor,* 529 U.S. at 409-410, 120 S.Ct. at 1521-1522. However, federal and state courts cannot agree on the standard of review to be applied under *Lawrence,* so looking at this matter objectively, the Ohio Supreme Court's construction of *Lawrence* as an application of the rational basis test to determine whether a substantive Due Process right has been violated is not unreasonable. The Ohio Supreme Court noted that *Lawrence* set out a standard of a

---

*Williams v. Taylor,* 529 U.S. at 411, 120 S.Ct. at 1522.

5:08  CV 0686                                    27

"legitimate state interest that could justify intrusion into an individual's personal and private life," which it equated with a rational basis. The Supreme Court did not specify whether it was referring to a classification that was rationally-related to the legitimate state interest. However, the conclusion that a liberty is protected under the rational basis doctrine is in accord with Supreme Court precedent.[18]

*Lowe's challenge to the Ohio Supreme Court's reading of O.R.C. §2907.03(A)(5):*

Lowe reaches into other descriptions of battery covered by Ohio Rev. Code §2907.03(A)(5) as *in loco parentis* relationships, as well as guardian and custodial relationships, for his point that the purpose of the statute is to protect children, not adults.  The federal courts, though, cannot reconstruct the state court's construction of the statute. See *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407(2005)("[A] state court's interpretation of state law, including one

---

[18] See *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. at 966, 112 S.Ct. at 2867 (Rehnquist, C.J, concurring and dissenting in part):

   We have stated above our belief that the Constitution does not subject state abortion regulations to heightened scrutiny. Accordingly, we think that the correct analysis is that set forth by the plurality opinion in *Webster*. A woman's interest in having an **abortion is a form of liberty protected by the Due Process Clause, but States may regulate abortion procedures in ways rationally related to a legitimate state interest.** *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 491, 75 S.Ct. 461, 466, 99 L.Ed. 563 (1955); cf. *Stanley v. Illinois*, 405 U.S. 645, 651-653, 92 S.Ct. 1208, 1212-1214, 31 L.Ed.2d 551 (1972)(emphasis supplied).

Further Justice O'Connor in her concurring opinion based on Equal Protection in *Lawrence* stated:

   Under our rational basis standard of review, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne v. Cleburne Living Center, supra*, at 440, 105 S.Ct. 3249[.]

*Lawrence v. Texas*  539 U.S. at 579, 123 S.Ct. at 2484.

5:08  CV 0686                                    28

announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  Federal collateral review is, as stated previously, circumscribed by 28 U.S.C. §2254(d). The Ohio Supreme Court has rendered its finding under *Lawrence*, that Ohio's incest law does not infringe on Lowe's substantive Due Process right of privacy. The federal district court is relegated to determining whether that finding was an objectively unreasonable application of *Lawrence*.

### *CONCLUSION AND RECOMMENDATION*

Petitioner, Paul D. Lowe, has not demonstrated that he is in custody pursuant to a judgment of the state court which resulted in a decision that was an unreasonable application of Federal law as determined by the Supreme Court of the United States. Nor was the state court decision "contrary to" precedent from the U.S. Supreme Court.  See 28 U.S.C. §2254(d)(1) and (2).   There has been no demonstrated need for an evidentiary hearing.   Accordingly, it is recommended that this application for habeas corpus be denied, that Lowe's motion for summary judgment be denied because he has not established a right to relief as a matter of law  (ECF # 1, 15), and that the petition be dismissed in its entirety.

                                                  s/James S. Gallas
                                         _____
                                            United States Magistrate Judge
Dated: May 28,  2009


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time

5:08  CV 0686                              29

WAIVES the right to appeal the Magistrate Judge's recommendation. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).